**In re David LAPIN.**

No. 02–40363–H2–13.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Sept. 3, 2003.

Hilary B. Bonial, Brice, Vander, Linden, et al., Dallas, TX, for Principal Residential Mortgage Incs.

J. Craig Cowgill, Michael S. Holmes, Cowgill & Holmes, PLLC, Houston, TX, for Robert Appleby, et al.

Edgar A. Goldberg, Attorney at Law, Houston, TX, for Meridian Bernardino Base LLC, Riverside Meridian Base LLC, San Bernardino Riverside Base LLC, Moe Nasr, Rose Lakes Ltd.

Nanneska N. Hazel, George & Donaldson LLP, Austin, TX, for Alex Weil, Delaine Weil, Martha Walker, Rod Stevenson.

Stephen J. Korotash, Fort Worth, TX, for The United States Securities & Exchange Commission, United States Securities And Exchange Commissions.

Michael A. Lam, Michael A. Lam, PC, Houston, TX, for Bridget Cleary Karam, Ted Karam.

Johnie J. Patterson, II, Walker & Patterson, P.C., Houston, TX, for Robert A Behar, Tampico Holdings, Ltd., The Fleischman Family Trust.

William N. Radford, Thompson, Coe, Cousins and Irons, LLP, Dallas, TX, for TD Waterhouse Investor Services Inc.

Owen Mark Sonik, Perdue Brandon et al., Houston, TX, for Spring ISD.

Kenneth Paul Thomas, Attorney at Law, Houston, TX, for David G. Peake, Trustee.

Pamela H. Walters, Aldine ISD, Houston, TX, for Aldine Independent School District.

Randy W. Williams, Thompson & Knight LLP, Houston, TX, for David Isaac Lapin.

### FINDINGS, CONCLUSIONS, AND REASONS IN SUPPORT OF CONFIRMATION OF CHAPTER 13 PLAN

WESLEY W. STEEN, Bankruptcy Judge.

David Lapin (the "Debtor") filed this bankruptcy case on September 9, 2002.

This case (and several others filed by other debtors in this court) involve interrelated investment and loan programs that have engendered allegations of fraud, including allegations that the entire series of transactions constituted a Ponzi scheme. Specific objections to confirmation were very professionally and competently asserted, but the heart of those objections is whether a debtor (who is alleged to have committed substantial fraud and securities violations) can obtain a chapter 13 "super-discharge" by making exempt assets available to his creditors and by devoting his limited income to creditors for 36 months. For reasons set forth below, the Court concludes that the Debtor qualifies for relief under chapter 13 of the Bankruptcy Code and that the chapter 13 plan proposed by the Debtor satisfies the statutory requirements for confirmation. Therefore by separate order issued this date the Court has confirmed the Debtor's chapter 13 plan.

## BACKGROUND FACTS

The background transactions that gave rise to the multiple bankruptcy cases involving the Debtor and others are much too complicated for analysis here. It is sufficient, for these purposes, to say that the Debtor and others were engaged in various securities transactions (allegedly including or constituting a Ponzi scheme) that allegedly defrauded numerous investors out of substantial amounts of money.

In the numerous related bankruptcy cases that resulted from these transactions, the Court has addressed hundreds of millions of dollars of assets and claims. Two realities are not disputed. First, emotions and anger run high. Second, there are insufficient assets available in any of the entities to satisfy a substantial amount of the claims.

The corporate entities involved in these transactions filed chapter 11 cases, and after substantial negotiation and compromise a consensual chapter 11 plan was confirmed. Other individuals involved in the transactions have filed bankruptcy cases.

## ALIGNMENT OF PARTIES

The Debtor proposed the plan. The chapter 13 Trustee supports plan confirmation, opposes conversion or dismissal of the case, and has filed memoranda in support of the Debtor's position. A number of creditors engaged counsel who monitored the proceedings and did not oppose confirmation, but took no other position. The Fleischman Family Trust and Tampico Holdings, Ltd. (the "Objecting Parties")[1] obtained counsel, actively opposed confirmation, and moved to dismiss the case or convert it to chapter 7. A very large number of parties did not obtain counsel, but filed very short statements (one or two sentences) in which they supported the Objecting Parties.[2] Robert

1. The Debtor and Chapter 13 trustee objected to the standing of these parties. Since the Court has an independent duty to evaluate plan confirmation requirements, the Court allowed these entities to present their case. Their evidence and argument were thus received either as (i) a party entitled to be heard, or (ii) an *amicus curiae*.

2. At one of the hearings, counsel for Tampico/Fleischman presented a list of alleged creditors, and counsel stated that those alleged creditors supported the Tampi-

co/Fleischman objection to confirmation and motion to convert. The Court viewed the situation as difficult and ambiguous, since counsel was making a representation to the Court concerning parties whom he did not represent. Many of those individuals have since filed *pro se* statements, consisting of about two sentences, that state merely that the named individuals join in the Tampico/Fleischman objection & motion to convert. The Court will treat all such parties as Object-

Ogle, liquidating trustee of the related Premier bankruptcy case, supports confirmation of the plan and has agreed to reduce his claim from $235 million to $100 million if the plan is confirmed.

The Securities and Exchange Commission has entered into a civil settlement with the Debtor which prohibits his involvement in securities activities and which, in effect, subordinates the SEC claim in this bankruptcy case to claims of unsecured creditors. The civil settlement does not preclude criminal charges against the Debtor. The SEC has monitored this chapter 13 case, but has not taken an active part in the litigation.

## ELIGIBILITY FOR CHAPTER 13 RELIEF

Bankruptcy Code § 109(e) defines eligibility for relief under chapter 13. To be eligible, a debtor must be (i) an individual with regular income, (ii) whose noncontingent, liquidated debt is less than certain statutory limits that are indexed to inflation. There is no dispute that the Debtor is an individual.

■ Addressing the second requirement first, although total claims against the Debtor substantially exceed the limits for chapter 13 eligibility,[3] the Debtor's noncontingent, liquidated, unsecured debts are less than the limits in the statute. Virtually all of the objecting claims are unliquidated fraud claims.

■ Bankruptcy Code § 101(30) defines "individual with regular income" as an

individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title

The Objecting Parties argue that the Debtor does not have "sufficiently stable and regular income" to fund the payments called for in the plan. The facts necessary to determine this issue are substantially undisputed. The parties argue the law applicable to those facts.

The Debtor entered into a compromise and consent decree with the Securities and Exchange Commission that essentially terminates his ability to earn income from securities work, which is the only field in which the Debtor is trained and experienced. In unrebutted testimony, the Debtor stated that this restriction eliminates his ability to earn any substantial income in the near future. The Debtor earns $2,000 per month from Personal Legacies, a corporation owned by his wife.[4] The Debtor's living expenses, as set forth in his bankruptcy schedule J, substantially exceed $2,000 per month. The Debtor proposes to withdraw money from his IRA[5] to supplement his earnings, as necessary to fund his monthly living expenses and to fund the chapter 13 plan payments. The Debtor also proposes to sell assets (both exempt and non-exempt assets) and to contribute those proceeds to the chapter 13 trustee for distribution to creditors.

The Debtor's chapter 13 plan proposes to pay a total of $1,148,000 to the chapter 13 trustee, payable $2,000 per month for 36 months, with certain "Supplements":

ing Parties, without individually looking into the validity of their claims or their standing.

3. Bankruptcy Code § 109(e). The Debtor estimates that total claims, including unliquidated claims, will exceed $403,000,000. *See* chapter 13 Plan—Amended August 1, 2003, paragraph K.

4. The corporation markets the Debtor's services in video production of personal biographies for individuals and in expense analysis for businesses.

5. No party has contested the Debtor's contention that the IRA is fully exempt from creditor's claims.

1. Proceeds from sale of assets;

2. The Debtor's 2002 tax refund, expected to be $175,000;

3. $20,000 each from the Debtor's children's UGMA accounts;

4. Sale of the Debtor's exempt homestead and payment to the trustee of such sums as may be necessary to fund $1,120,000 by July 1, 2004.

In addition to the $1,148,000, the chapter 13 trustee has certain investment and partnership interests that he can sell for distribution to unsecured creditors. Finally, the trustee also has certain chapter 5 avoidance actions that he might, or might not, pursue for the benefit of unsecured creditors.

Obviously, the Debtor cannot pay the trustee $2,000 per month from his salary if his salary is only $2,000 per month and if he uses that salary to pay his monthly living expenses which are substantially more than that. The Debtor proposes to pay his living expenses and the chapter 13 trustee by combining (i) his salary, (ii) withdrawals from his individual retirement account, and (iii) sales of assets.

The Objecting Parties argue that the debtor does not have "sufficiently stable and regular [income] to enable such individual to make payments under a plan under chapter 13 of this title" because his salary is less than his living expenses. The Objecting Parties argue that since the living expenses exceed current salary, the Debtor has no "disposable income" to fund a plan.

In the Objecting Parties' Memorandum,[6] the Objecting Parties concede that the Bankruptcy Code does not require that *all* plan payments come from the Debtor's regular employment earnings.[7] Bankruptcy Code § 1322(b)(8) provides that a chapter 13 plan may " ... provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." Section 1322(b)(10) provides that a plan may " ... include any other appropriate provision not inconsistent with this title." The Objecting Parties argue, however, that if the Debtor's earnings from current employment are insufficient to pay the Debtor's ordinary living expenses, then the plan is simply a liquidation of assets for which the Debtor is not entitled to a chapter 13 "superdischarge."

The Bankruptcy Code does not define "income". The Objecting Parties' Memorandum concedes that the Bankruptcy Code substantially expanded the source of funds that qualify a person for chapter 13 relief (albeit not with complete clarity). The Objecting Parties agree that Congress intended to broaden eligibility substantially. Prior to the Code, relief was limited to "wage earners". The statutory change to "individuals with regular income" was intended to expand eligibility and that change was intended to allow individuals on social security, fixed pension incomes, and investment incomes to qualify.[8] The Debtor's memorandum[9] cites numerous cases holding that pension payments and social security payments are "regular in-

---

6. Docket # 287.

7. " ... [S]ections 1322 and 1325 ... allow a debtor to additionally fund a plan through *property* and *income* to accomplish more than the minimal requirements of confirmation." Objecting Parties Memorandum. [Emphasis in original.]

8. *See* the quotation in the Objecting Parties Memorandum, page 2.

9. Docket # 284.

come" for purposes of chapter 13 eligibility.

While the Court understands the logic of the Objecting Parties' argument, the Court concludes that "income" for purposes of chapter 13 eligibility, includes withdrawals from an individual retirement account because: (i) Congress intended to substantially expand eligibility for chapter 13 relief with an expansive, not a restrictive, definition of income; (ii) the legislative history clearly indicates that receipt of retirement funds constitutes "income" for purposes of chapter 13; (iii) individual retirement accounts are a form of retirement savings minutely regulated by Subchapter D of the Internal Revenue Code, the same chapter that regulates virtually all other private pension and retirement plans; (iv) retirement funds are "income" that qualify an individual for chapter 13 relief; and (iv) it appears that the receipt of individual retirement account proceeds, combined with the Debtor's employment income, will be sufficient to fund substantial portions of the chapter 13 plan.[10]

## PLAN CONFIRMATION REQUIREMENTS

Bankruptcy Code § 1325(a) requires the Court to confirm a chapter 13 plan if:

1. The plan complies with the provisions of the Bankruptcy Code and of chapter 13;

2. Applicable fees have been paid;

3. The plan has been proposed in good faith and not by any means forbidden by law;

4. The value (as of the effective date) of property to be distributed to unsecured creditors is not less than the amount that they would get under chapter 7;

5. Secured creditors, if provided for in the plan, have accepted the plan or are treated according to the statutory requirements;

6. The Debtor will be able to make the payments called for in the plan.

In addition, under Bankruptcy Code § 1325(b), the Debtor must devote to the plan a sum at least equal to the amount of his disposable income over 36 months. (This provision applies if an unsecured creditor objects, which has occurred.)

### A. Uncontested Requirements

Requirements 1 and 2 above were not in substantial dispute. The Court finds that those requirements are met.

The plan does not provide for payment to secured creditors, except for payments

10. In the text, the Court has concluded that withdrawals from an individual retirement account are "income" for purposes of funding a chapter 13 plan. But, as with so many things, there is another way to look at these same facts and at this issue. The essential facts are very simple. The Debtor earns $2,000 per month from Personal Legacies. The Debtor proposes to pay the chapter 13 trustee $2,000 per month, plus certain additional sums. The Debtor's living expenses exceed $2,000 per month.

The Objecting Parties argue that the Debtor's salary from Personal Legacies is less than the amount that he spends on living expenses, and therefore he has no current earnings to fund a plan. And viewed from that perspec-

tive, they are right. But one might approach this same question by assuming that the entire $2,000 per month is paid to the trustee and that the living expenses are paid from the individual retirement account. So viewed, the problem is similar to the question of whether a glass, which is 50% filled with a liquid, is half full or half empty. Accountants might look at it as a FIFO or LIFO question

The Objecting Parties concede that *some* of the payments to a chapter 13 trustee can be accomplished by sale of assets. So, if one views the glass as half full, then the Court must reject the argument by the Objecting Parties that the case should be dismissed because the Debtor does not have sufficient regular income to fund at least part of the plan.

(such as the mortgage note) outside the plan. No secured creditor has objected to its treatment and the Court finds that requirement 5 is satisfied.

## B. *The Plan is Proposed in Good Faith and Not by Any Means Forbidden by Law*

There was no contention that the plan was proposed by illegal means. The Court finds that this requirement is satisfied.

■ The Objecting Parties argue that the Debtor is merely proposing a liquidation. The Objecting Parties argue that the statute only provides a limited discharge for a liquidation, and that the Debtor should not be able to purchase a more extensive discharge by including exempt assets in the chapter 13 plan. The Objecting Parties argue that the Debtor is in bad faith by trying to discharge fraud claims through a chapter 13 plan that is essentially a liquidation plan.

In some respects, the Objecting Parties are correct. A discharge in a chapter 7 bankruptcy case does not provide a debtor any relief from a claim based on fraud, misrepresentation, defalcation in a fiduciary capacity, or other specifically defined misconduct: Bankruptcy Code § 523(a)(2), (4), (6). Therefore, if this Debtor had filed a chapter 7 case, he could have kept his exempt assets, but, if a timely objection were filed and successfully prosecuted, the Debtor would not have been discharged from debts for fraud, *etc.* But chapter 13 provides a discharge of those debts, if a chapter 13 plan is confirmed and consummated: Bankruptcy Code § 1328(a). In this case, if the chapter 13 plan is confirmed the Debtor will give up most of his exempt assets but will get a discharge of debts that are otherwise nondischargeable. The heart of the Objecting Parties' argument against confirmation (and in favor of conversion to chapter 7) is that the Debtor

should not be permitted to purchase a chapter 13 "superdischarge" by surrendering his exempt assets to the chapter 13 trustee for distribution to unsecured creditors.

The Objecting Parties' argument is powerful and appealing. But the Court believes that the Court of Appeals for the Fifth Circuit has answered that question before, and contrary to the position urged by the Objecting Parties.

In *In re Chaffin* 816 F.2d 1070 (5th Cir.1987) ("*Chaffin 1*") *mod. by In re Chaffin* 836 F.2d 215 (5th Cir.1988) ("*Chaffin 2*") the Court of Appeals for the Fifth Circuit considered the following facts. Chaffin was a securities dealer who defrauded a customer and stole $15,000 from him. Chaffin filed a chapter 7 bankruptcy case; the court denied discharge of the $15,000 debt. Shortly thereafter, while in prison for the securities law violations, Chaffin filed a chapter 13 case. His income was $100 per month: $50 per month from real estate consulting and $50 per month from "other sources." His expenses were $90 per month: $10 for food, $5 for clothing, $10 for laundry and cleaning, $25 for books and periodicals, and $40 for alimony, maintenance or support. Chaffin proposed to pay $10 per month for 36 months ($360) to a chapter 13 trustee for the benefit of the defrauded creditor and thereby to obtain a chapter 13 discharge of the $15,000 debt, (which had been determined to be non-dischargeable in Chaffin's prior chapter 7 case). In *Chaffin 1*, the Fifth Circuit reversed the trial court's decision that the plan was filed in bad faith. *Chaffin 1* explains the analysis of bad faith in chapter 13 cases:

> Congress could have easily added more exceptions to the list in § 1328(a) had it so intended. Absent some other evidence of lack of good faith, therefore, merely seeking the benefit of § 1328(a)

does not stamp the debtor's application with bad faith. Although the debtor's motive in invoking Chapter 13 solely to obtain discharge of a previously non-dischargeable debt, as well as the circumstances under which that debt arose, may be factors to consider as part of the totality of the circumstances, they cannot, as a matter of law, suffice to show bad faith.

The "totality of the circumstances" test means what it says: It exacts an examination of all of the facts in order to determine the bona fides of the debtor.

In *Chaffin 2*, the Fifth Circuit modified *Chaffin 1* to delete three paragraphs (probably including the preceding quotes, but the reference is not entirely clear.) Nevertheless, in *Chaffin 2* the Court continued to emphasize that a debtor is *not* in bad faith merely because he attempts to obtain a discharge in chapter 13 that would be (or was) denied in a chapter 7 case:

> We adhere to our holding that the fact that Chaffin is invoking Chapter 13 to obtain discharge of a debt previously held non-dischargeable in Chapter 7 because it was incurred through fraud cannot, as a matter of law, suffice to show bad faith. [*Chaffin 2* at 216.]

The Fifth Circuit, in *Chaffin 2*, remanded for fact-finding, and specifically directed inquiry into (i) whether Chaffin was devoting all of his disposable income to the plan over 36 months, (ii) whether Chaffin contemplated release through bankruptcy at the time that he committed the fraud, and (iii) whether any creditor has objected to plan confirmation. In the case at bar, the first and second issues would indicate that the Debtor is in good faith.[11] The third element would be the only one appli-

cable in this case. Some creditors have objected; others support the plan.

■ In trying to decide whether a chapter 13 plan is proposed in good faith, there is an almost irresistible urge to consider whether the debts to be discharged arose out of the Debtor's misconduct. But both *Chaffin 1* and *Chaffin 2* instruct to the contrary. In *Chaffin 2*, the Fifth Circuit indicated that the Debtor's pre-bankruptcy mindset is only relevant if the debtor *intended to seek a chapter 13 discharge at the time of the fraud.* Otherwise, it is only post-petition intent and purpose that is considered. A more expansive explanation is in *In re Keach*, 243 B.R. 851, at 868 (1st Cir. BAP 2000):

> We begin with basics. The meaning of good faith is simple honesty of purpose. This is the phrase's common English meaning. It is also how the phrase is used in commercial law. And, if there can be any doubt that this was its meaning intended by Congress when it passed the Code, that doubt is resolved by examination of decisions under the prior Act. In applying the same good faith requirement under the prior Act, courts looked only to the honesty of the debtor's postfiling conduct.

On balance, applying a totality of circumstances test as well as the specific tests suggested in *Chaffin 2*, the Court concludes that the Debtor has proposed the plan in good faith. The Debtor cooperated with the Chapter 11 trustee of the Premier case. The Debtor has been forthcoming with exhaustive discovery. The Debtor's plan vests avoidance actions in the trustee and requires substantial disclosure and devotion of income to the trustee

---

11. The Objecting Parties assert that the Debtor is devoting *more* than his disposable income over 36 months to the plan and there has never been a suggestion that the Debtor contemplated release in bankruptcy when engaged in the transactions that were allegedly fraudulent.

over 36 months. The Debtor's plan provides that the Trustee may seek modification of the plan if the Debtor's income increases over the duration of the plan.

C. *The value of property to be distributed to unsecured creditors is not less than the amount that they would get if the plan were liquidated.*

■ The fourth chapter 13 plan confirmation test (as enumerated above) is whether

... the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 ...

In other words, will the unsecured creditors get more under the plan than they would get if the case were liquidated under chapter 7? The analysis is not free from all ambiguity, as one might expect with an issue that was aggressively litigated by able counsel. However, the Court's conclusion is that the liquidation test is met, as explained in the following table:

| ASSET | CHAPTER 7 | CHAPTER 13 |
|---|---|---|
| Mandatory amount—from exempt property, post-petition earnings, and some non-exempt property | –0– | 1,148,000 |
| Non-exempt cash | 345,076 | (included in above) |
| Value of automobiles in excess of exempt amt. | 19,000 | –0– |
| Sale of Katy Freeway Interest | 80,505 | (included in above) |
| Sale of other investment/partnership rights vested in trustee | N/A-same amount in both chapter 7 & chapter 13 | N/A-same amount in both chapter 7 & chapter 13 |
| Claims for gifts | 80,000 | (included in above) |
| Retainers to professionals | 48,000 | –0– |
| Claim against Kilpatrick & Lockhard | 50,000 | –0– |
| Life insurance cash value | 30,275 | –0– |
| Total | 652,856 | 1,148,000 |
| Trustee's fees (estimated for chapter 7) | 35,000 | 114,886 |
| Attorneys for trustee's professionals (estimate) | 100,000 | 35,000 |
| Total | 517,856 | 998,114 |

The statute requires a present value discount, but the Court believes that the delay in receiving distributions would be *at least* as great, if not greater, in chapter 7 as in chapter 13. Therefore, that computation is not material in this case.

The Court also understands that a number of other considerations will cause the actual distributions to differ materially from these estimates. First, attorney fees for the trustee's professionals will, no doubt, differ from the estimate. The Court has based the estimate on many years of ruling on fees for counsel for trustees. The estimate for chapter 7 trustees fees is probably a gross *under*estimate; the Court would not be surprised if it cost more than the total amount available in the estate to litigate the amount of the fraud claims against the estate. Therefore, it would not be a surprise to the Court if the actual amount available to unsecured creditors in chapter 7 would be little or nothing. Second, certain investment and partnership assets and certain bankruptcy chapter 5 avoidance actions

are held by the trustee and can be liquidated for the benefit of unsecured creditors. This may, or may not, substantially increase the distribution to unsecured creditors. But since the same result would occur in either case, estimates are not necessary. There are other assumptions and computations that could be made. The Court has simply made its best estimate based on its appreciation of the evidence.

The Objecting Parties have argued that the Debtor's initial schedules and statement of financial affairs were incorrect or misleading. Of course, if there are undisclosed assets, transfers, or claims, or if the value of those disclosed is not correct, then the liquidation analysis may not be correct. However the Court has seen no material evidence of that. In addition, the Court is comforted in the conclusion that the liquidation analysis is reasonably correct for two reasons. First, the data has been extensively analyzed and the Debtor has been under close examination by two experienced trustees (the chapter 13 trustee and Robert Ogle), by the Securities and Exchange Commission, and by numerous creditors. No material undisclosed assets or materially misstated values have been pointed out to the Court. Second, except for exempt assets, all other assets vest in the trustee, whatever their value.

The Court has seen no substantial evidence that suggests that the amount that would be received by creditors in chapter 7 is greater than the amount that they will receive under the Debtor's proposed plan. All credible evidence suggest that creditors will get more under the chapter 13

12. The Debtor offered to increase payments to the chapter 13 trustee during the 36 months that this plan is in effect if his income increases. The plan so provides. The Court required the parties to give great attention to including in the plan language that requires

plan. Therefore the Court finds that the liquidation test is satisfied.

**D. *The Debtor will be able to meet the payment requirements of the Plan.***

■ Payments will come from defined sources, including collection of income tax refunds and sales of property. The Court is satisfied from the testimony that it is more probable than not that the sales will take place as forecast and the refund will be received as forecast. In addition, the funds in the individual retirement account provide additional guarantees.

The Court concludes that the Debtor will be able to make the payments.

**E. *The Debtor is devoting substantially all disposable income over 36 months to the plan.***

The analysis of this issue is in the beginning of these reasons where the Court addresses the argument that the individual retirement withdrawals do not constitute property of the estate. The Court concludes that the Debtor is devoting substantially all of his disposable income to the plan for 36 months.[12]

**F. *Additional Finding of Best Interest of Creditors***

■ The Debtor testified that his purpose in filing a chapter 13 case was to reduce litigation expenses (and thereby make more money available to creditors) by eliminating the cost of litigating fraud claims filed by hundreds of potential creditors involving possibly $403,000,000 of claims. That testimony was interesting,

full disclosure of all income and all prospects for income. Therefore, if the trustee discovers that the Debtor is not contributing all disposable income to the plan over 36 months, the plan will be amended to require additional contributions.

but the Court suspects that obtaining a "superdischarge" might have also played a part. Nevertheless, the Debtor's argument is not without merit. Even in chapter 7, the claims would be expensive to determine.

The Court understands that some creditors prefer to deny the Debtor a chapter 13 "superdischarge" rather than receiving a minimal payment. But not all creditors have objected, and only two parties have felt strongly enough to engage counsel to oppose plan confirmation.

Denial of confirmation would preclude a settlement between the liquidating trustee in the Premier (related) bankruptcy case in which the trustee agreed to reduce his claim substantially. In addition, the Securities and Exchange Commission has accepted the Debtor's proposed settlement limiting the SEC claim in the case and (effectively) subordinating that claim to the claims of other creditors. Having observed the dynamic, the issues, and the vigor of disputes in the related cases, the Court is more than convinced that litigation of all issues would more than eliminate any potential for recovery by any creditors.

In sum, the Court concludes that confirmation of the chapter 13 plan is in the financial best interest of creditors, that the Debtor's plan proposal was in good faith, and that there is no evidence that any prepetition fraudulent or other misconduct (if there was any) was conducted with a chapter 13 superdischarge in mind.

## CONCLUSION

Therefore, by separate order issued this date, the Court confirms the Debtor's chapter 13 plan filed August 1, 2003, docket # 286.

### ORDER CONFIRMING CHAPTER 13 PLAN, APPROVING COMPROMISE AND DENYING MOTION TO DISMISS OR CONVERT

For reasons set forth separately in writing this date, the Court confirms the amended chapter 13 plan filed by David I. Lapin on August 1, 2003, docket # 286.

The settlement between Robert Ogle, Liquidating Trustee, and the Debtor is APPROVED.

The Motion to Dismiss or Convert (docket # 67) is DENIED.