**In re Jill A. FLEURY, Debtor.**

**Jill A. Fleury, Defendant–Appellant,**

**v.**

**Scott A. Carmichael, Plaintiff–Appellee.**

**BAP No. MB 03–051.**
**Bankruptcy No. 02–15033–WCH.**

United States Bankruptcy Appellate Panel of the First Circuit.

March 23, 2004.

Jill A. Fleury, pro se, on brief for the Appellant.

Mary Jeanne Stone, Belford & Stone, Fall River, MA, on brief for the Appellee.

Before VOTOLATO, VAUGHN, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Judge.

The United States Bankruptcy Appellate Panel for the First Circuit has before it the Debtor, Jill A. Fleury's appeal of the June 6, 2003 order of the United States Bankruptcy Court for the District of Massachusetts (Hillman, B.J.) dismissing with prejudice her Chapter 13 case (the "Order"). For the reasons set forth below, the appeal is DISMISSED as moot. Alternatively, on the merits and for the reasons given, the Order of the Bankruptcy Judge is AFFIRMED.

## I. BACKGROUND

Former husband and wife, Scott A. Carmichael and Jill Fleury, were divorced on May 29, 1995, in the Commonwealth of Massachusetts, Probate and Family Court, Bristol Division. The divorce decree incorporated a marriage separation agreement which provided, *inter alia*, that if Fleury received a settlement or judgment in connection with her discrimination claim against Wynn & Wynn, P.C., pending before the Massachusetts Commission Against Discrimination ("MCAD"), she would pay Carmichael one-third of any back pay recovered, plus one-third of any amount awarded for emotional distress. In November 1995, Fleury received a substantial monetary award, which Wynn & Wynn appealed.

In June 1996, Carmichael filed an (unrelated) complaint with the Probate Court against Fleury, which was resolved by a stipulation and judgment under which the parties cancelled an existing promissory note, and entered into a new note to Carmichael in the amount of $10,000.00. Fleury defaulted on the new note, and Carmichael made demand for payment. In November 1997, Fleury filed a post-divorce complaint with the Probate Court, seeking to modify an existing child support order. In 1998, Fleury owed federal income taxes and was in default on her student loans.

On January 11, 1999, Fleury, herself an attorney, appearing *pro se*, filed her first Chapter 13 case (the "Petition I") and a 100% plan. Carmichael filed a proof of claim in the amount of $10,550.00 ($10,-000.00 due under the note, plus a four per cent late fee and $150.00 in legal fees). On Schedule B of Petition I, Fleury listed the Wynn & Wynn judgment:

> judgment against Wynn & Wynn, P.C. (on appeal by Wynn & Wynn, P.C. before the Appeals Court). Less 35% contingency fee owed to attorney, costs due to attorneys, and one third of award for emotional distress and back pay owed to Scott Carmichael pursuant to divorce $143,000.00.

On her Schedule F, Fleury stated that Carmichael was owed $10,000.00 on the promissory note, but did not mention him as having any interest in the Wynn & Wynn judgment. In March 1999, at Fleury's § 341 meeting, she answered questions about the Wynn & Wynn issue. Carmichael did not appear at the initial meeting, but the Trustee re-opened the meeting to allow Carmichael to participate.

In June 2000, the Massachusetts Supreme Judicial Court issued a decision in Fleury's MCAD case, awarding her additional attorney fees and costs which substantially increased the total judgment. Soon thereafter, Fleury obtained an opinion letter from bankruptcy practitioner Honoria DaSilva–Kilgore, Esquire, stating that because Carmichael had notice of Fleury's bankruptcy "Petition I" and filed a proof of claim with regard to the $10,550.00 owed under the promissory note, but did not file a claim or bring an adversary proceeding to establish his right to any amount under 11 U.S.C. § 523(a)(15), any debt Fleury allegedly

owed to Carmichael in connection with the Wynn & Wynn matter would have been discharged. Also, bankruptcy specialist and former Chapter 7 Trustee Henry C. Ellis, Esquire, gave Fleury an oral opinion that Carmichael's claim may very likely have been discharged in her "Petition I" filing. Fleury's law partner John E. Zajac, Esquire, concurred with the two opinions. In her affidavit dated March 27, 2003, Fleury said she relied on the opinions of these three attorneys.

During this same time period, while Fleury was experiencing health problems, she decided to take a salary advance which was used to pay off her "Petition I" plan. For several months thereafter, Fleury was on leave from work due to medical complications. In December 2000, the Chapter 13 Trustee sent to Attorney Zajac the Trustee's Report and Account for Fleury's first bankruptcy case. On January 9, 2001, Fleury and Wynn & Wynn agreed to settle their dispute for $390,000.00. The Chapter 13 Trustee had knowledge that Fleury intended to accept the settlement.

On January 26, 2001, the Chapter 13 Trustee faxed to Fleury's counsel (Zajac) a letter advising that Fleury had completed her plan by paying all creditors in full and that the case was ready to be closed. On the same date, Zajac wrote to Kevin O'Malley, Esquire, of Wynn & Wynn, saying that Fleury's bankruptcy had been "resolved," and confirmed that the judgment against Wynn & Wynn had been listed as an asset on Schedule B. On March 15, 2001, Fleury received a discharge of her debts listed in Petition I. Although Fleury received net settlement proceeds in the amount of $244,340.92, she did not amend her schedules to reflect the receipt of the

nearly one quarter million dollar recovery. She paid several creditors and spent virtually all of the rest[1] of the Wynn & Wynn settlement proceeds in various ways, including a $14,000.00 family vacation and a $58,500.00 transfer to her present husband.

In June 2002, the Probate Court issued Findings of Fact and Rationale on Fleury's 1997 request for modification of child support, stating, *inter alia*, that Fleury's "real motivation for filing debtor relief was then, and currently is, an attempt to defeat [Carmichael's] claim for a share of the MCAD claim." Fleury appealed those findings and on July 12, 2002, filed her second Chapter 13 petition ("Petition II") to establish that any debt to Carmichael was discharged, and to pay her student loans. On Schedule B of Petition II, Fleury lists cash and bank account assets of $5,549.65. On Schedule F, Carmichael is listed as an unsecured creditor, with the claim described as unliquidated and disputed, and the amount as zero.

Fleury's Petition II plan, which provided for a 100% dividend to unsecured creditors whose claims total $18,790,[2] was confirmed in October 2002. The plan did not provide for any payment to Carmichael, and Fleury did not file a complaint in the bankruptcy court to determine the dischargeability of Carmichael's debt. Carmichael, however, did file a complaint to have his claim determined to be non-dischargeable, together with a motion for leave to proceed against Fleury in the Probate Court to recover what he alleged was owed to him out of the Wynn & Wynn settlement, and a priority unsecured proof of claim in the amount of $156,000.00. Fleury objected to

---

**1.** We say "virtually all of the proceeds" because in her schedule of assets in this case ("Petition II") Fleury lists total cash of $5,549.

**2.** Of this amount, $17,417 pertains to student loans, and $1,373 is for an unsecured credit card debt.

the motion for relief from stay and the proof of claim, on the ground that Carmichael's claim had been discharged in her first bankruptcy case.

■ After a hearing on the motion for relief and the objection to proof of claim, the bankruptcy judge issued an order for Fleury to show cause why her case should not be dismissed as a bad faith filing. At the conclusion of the show cause hearing, the bankruptcy judge took the matter under advisement, and in June 2003, issued an order dismissing Fleury's case and prohibiting her from filing another bankruptcy case for 360 days. In his memorandum of opinion the bankruptcy judge found that Fleury had failed to show cause why her case should not be dismissed as a bad faith filing.[3] Utilizing the totality of circumstances test, the bankruptcy judge noted the following indicia of bad faith: (1) Fleury manipulated the bankruptcy Code and dissipated over $350,000 in the year and a half between her two bankruptcy filings; (2) Fleury filed both bankruptcies for the sole purpose of evading her ex-husband's claim to the Wynn & Wynn settlement proceeds; (3) Fleury's unsecured creditors were minimal compared to the amount of cash she dissipated in the year and a half before filing Petition II; (4) Fleury's behavior was egregious, she was not making a good faith effort to repay her debts, but was attempting to avoid paying a legitimate debt to her ex-husband; and (5) Fleury's actions were purposeful and planned, i.e., she intentionally failed to disclose her ex-husband's claim in Petition I, and then after receiving the settlement funds, she dissipated them, leaving few assets and little income available to satisfy her ex-husband's claim in Petition II.

Fleury appealed the dismissal and filed a motion for stay pending appeal. In her request for a stay Fleury makes the strange argument that a complaint for contempt against her is pending before the Massachusetts Probate and Family Court and if that court orders her to pay the debt to Carmichael, it would render moot her argument here that the debt was discharged in Petition I. Even more surprisingly, in response to Panel questions at the oral argument, Fleury acknowledged that the Probate Court contempt proceeding was resolved, i.e., she had already paid the full amount of Carmichael's claim! When queried by the Panel as to why she was still pressing her motion for stay and the merits of her appeal, Fleury argued here, *for the first time*, that she had student loan obligations which were adjudicated in Petition II prior to the dismissal, and wanted to ensure that the bankruptcy court's order sustaining her objection to the student loan creditor's claim remained intact.

## II. DISCUSSION

### A. *Jurisdiction*

■ The bankruptcy appellate panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or, "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An order dismissing a Chapter 13 case is a final order. *See In re Bentley*, 266 B.R. 229, 233–34 (1st Cir. BAP 2001).

---

**3.** Based on the record before it, the Panel adds—not only was the Bankruptcy Judge *not clearly wrong* in his findings—but that he saw through the ruse being perpetrated by Fleury, and got it absolutely right in the first instance.

### B. *Mootness*

 Mootness is a bar to appellate jurisdiction.

Article III, § 2 of the Constitution grants jurisdiction to federal courts to adjudicate only live cases or controversies. U.S. Const., art. III, § 2, cl. 1. For a case to be justiciable, "an actual controversy must exist at all stages of appellate ... review, and not simply at the date the action is initiated." *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome, or alternatively, when the party invoking federal court jurisdiction no longer has a personal stake in the outcome of the controversy." *Boston and Maine Corp. v. Brotherhood of Maintenance of Way Employees*, 94 F.3d 15, 20. (1st Cir.1996) (internal citations omitted). "A case is moot, and hence not justiciable, if the passage of time has caused it completely to lose its character as a present, live controversy of the kind that must exist if the court is to avoid advisory opinions on abstract propositions of law." Laurence H. Tribe, American Constitutional Law § 3–11, at 83 (2d ed.1988) (internal quotations omitted). *Thomas R.W. v. Massachusetts Dept. of Educ.*, 130 F.3d 477, 479 (1st Cir.1997).

 Fleury's underlying Chapter 13 case, and consequently this appeal, are all about the debt owed to her ex-husband stemming from the Wynn & Wynn settlement. In her appellate brief and in her Motion for Stay Pending Appeal, Fleury's sole concern is with the bankruptcy judge's finding that her debt to Carmichael was not discharged in the prior bankruptcy. Then, while this appeal was pending, the Carmichael matter was fully resolved, i.e.,

Fleury paid that debt in full in the Massachusetts Probate and Family Court. In order to attach some significance to this appeal and to show some other legitimacy for her Chapter 13 case, Fleury now points to her student loan obligation. Under 11 U.S.C. § 523(a)(8), absent a showing of undue hardship, student loan debts are not dischargeable in bankruptcy, and that issue has not been raised in this case. The Panel notes, however, that any orders entered by the bankruptcy judge relating to such claims are given full effect notwithstanding subsequent dismissal of the case. *See In re Bevan*, 327 F.3d 994 (9th Cir. 2003) (finding that an order allowing or disallowing a claim is binding and conclusive, notwithstanding dismissal of the bankruptcy case); *In re Ramirez*, 283 B.R. 156 (Bankr.S.D.N.Y.2002).

Given the parties' prior settlement of the only disputed issue before this Panel, there is no actual controversy in existence at this stage of the appellate proceeding. *See Thomas R.W. v. Massachusetts Dept. Of Educ.*, 130 F.3d at 479. Accordingly, the Motion for Stay Pending Appeal is DENIED, and this appeal is DISMISSED as moot. Costs are awarded to the Appellee. *See* Fed. R. Bankr.P. 8014.