**In re William and Tracy DICEY, Debtors.**

**No. 03–12101–JMD.**

United States Bankruptcy Court, D. New Hampshire.

May 28, 2004.

Mark E. Cornell, Concord, New Hampshire, for Debtor.

Michael Bowser, Cheryl Erickson, Nashua, New Hampshire, for Gregory Carragher.

*MEMORANDUM OPINION*

J. MICHAEL DEASY, Bankruptcy Judge.

**I. INTRODUCTION**

On April 6, 2004, the Court held a hearing on Gregory Carragher's (the "Credi-

tor") Objection to the Confirmation of the Debtors' Chapter 13 Plan (Doc. No. 13).

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Creditor obtained a civil judgment in the amount of $40,000.00 against co-debtor William Dicey following a jury trial before the Merrimack County Superior Court on May 29, 2003. The writ filed in that matter alleged a claim for the intentional torts of assault and battery. Although William Dicey was not charged with any crime, the Creditor contends that the actions alleged in his writ constitute a criminal act. On June 13, 2003, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code. William Dicey made no effort to pay the judgment before filing for bankruptcy.

The parties do not dispute that the claim of the Creditor would be excepted from William Dicey's discharge had this case been filed under Chapter 7 of the Bankruptcy Code and that William Dicey would not be entitled to relitigate the issues determined by the jury in the state court proceeding.

The claims filed in the Chapter 13 case reveal unsecured claims totaling $67,348.18. Of this amount, $40,000.00 is the claim of the Creditor, $5,998.00 is owed to Julia Dicey (William Dicey's mother), and the balance of $21,350.18 is owed to other creditors. The Debtors' First Amended Chapter 13 Plan (the "Plan") (Doc. No. 21) filed on March 3, 2004, calls for thirty-six monthly plan payments of $125.00 and total plan payments of $4,800.00. There are no secured or priority creditors and the Plan states that there will be a de minimis to zero dividend available to unsecured creditors. Plan payments will be made for the exclusive benefit of the Trustee and the Debtors' attorney.

The Creditor contends that the sole reason the Debtors have filed for Chapter 13 protection is to avoid payment of his judgment. He states that the bankruptcy was filed less than a month after the jury verdict and that no other creditors were pursuing the Debtors at the time. The Creditor believes that the Debtors' Plan was not filed in good faith and should not be confirmed. The Debtors assert that they are merely taking advantage of the Chapter 13 discharge that Congress has afforded them.

## III. DISCUSSION

One of the statutory requirements for a Chapter 13 debtor is that he or she must propose a payment plan that satisfies the list of requirements found in section 1325(a).[1] Specifically, section 1325(a)(3) requires that the plan be proposed in "good faith." However, the Bankruptcy Code itself never defines good faith. Not surprisingly, absent a statutory definition, the meaning of the term good faith has been the subject of extensive litigation. Without legislative guidance, the courts have developed their own system of determination.

1. Unless otherwise indicated, all references to "section" refer to Title 11 of the United States Code.

■ The issue of good faith manifests itself in two instances within a Chapter 13 proceeding. First, pursuant to section 1307(c) the court may dismiss a case or convert it for cause. A lack of good faith or bad faith filing has been found to constitute cause for conversion or dismissal. Second, in order to be confirmed, a Chapter 13 plan must be proposed in good faith. As explained by Judge Kenner in *In re Virden*, 279 B.R. 401, 407 (Bankr.D.Mass. 2002), the same standard for finding good, or bad, faith may properly be used in both instances, the only distinction being who bears the burden of proof. Under section 1307(c), an objecting creditor bears the burden of proof, while under section 1325(a)(3), it is a debtor. *Id.* And when a debtor seeks the Chapter 13 discharge to discharge debt that would remain undischarged in a Chapter 7, that burden is especially heavy. *Id. (citing In re Leavitt*, 209 B.R. 935, 940 (9th Cir. BAP 1997); *In re Haskell*, 252 B.R. 236, 242 (Bankr. M.D.Fla.2000)).

Section 1328 of the Bankruptcy Code enumerates the types of debts excluded from discharge under Chapter 13. In section 523, the Bankruptcy Code lists the exceptions to discharge under a Chapter 7 bankruptcy filing. This list of excepted debts in Chapter 7 is much more extensive than that of Chapter 13, which is one of the attractions of a Chapter 13 reorganization to a debtor. As a result of this a Chapter 13 discharge is frequently referred to as a "superdischarge."

The purpose of Chapter 13 is to give qualified debtors another option to the total liquidation of Chapter 7. As a policy matter, however, Chapter 13 should not be a shield to allow tortfeasors and wrongdoers to avoid payments they have been adjudged to owe. It is clear from the statutory structure of the Bankruptcy Code that the primary goal of Chapter 13 is to promote greater and more widespread use of debt reorganization as an alternative to liquidation under Chapter 7. To effect this change, Congress established more liberal provisions for the Chapter 13 discharge. Moreover, courts have suggested that a public policy purpose behind Chapter 13 is to support "fair and even-handed" remedies for debtors whose financial problems are not due to their own misconduct, and who cooperate and conduct themselves fairly and openly with their creditors and with the bankruptcy court. *In re McLaughlin*, 217 B.R. 772, 776 (Bankr.W.D.Tex.1998) *(quoting In re Sitarz*, 150 B.R. 710, 723 (Bankr.D.Minn. 1993)).

In the absence of Congressional directives, the courts are obligated to interpret the law. *See In re Smith*, 848 F.2d 813, 819–20 (7th Cir.1988) (noting the adoption of the traditional tests for good faith because of the silence in the Bankruptcy Code). Congress is always free to readdress the issue and pass new, more definitive laws. *See id.* at 819 (suggesting that if Congress intended to reject the court-established totality of the circumstances test, Congress would have done so with specific legislation). The use of a totality of the circumstances test provides the flexibility needed to make factual determinations. Good faith has also been suggested to be a "policing mechanism ... to assure that those who invoke the reorganization provisions ... do so only to accomplish the aims and objectives of bankruptcy philosophy and policy and for no other purpose." *In re Chase*, 43 B.R. 739, 745 (D.Md.1984). One of the primary purposes of bankruptcy is to relieve an honest but unfortunate debtor from the weight of oppressive indebtedness and permit him to start afresh. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

■ Through the dedicated use of current and future disposable income, a Chapter 13 debtor obtains a fresh start and creditors receive an equitable distribution of the proceeds. But how can a zero or de minimis dividend be equitable for unsecured creditors?[2] This outcome seems particularly troubling when the unsecured creditor is a judgment creditor, adjudged to have been physically injured by a debtor. *See In re Scotten*, 281 B.R. 147, 149 (Bankr.D.Mass.2002) (stating that, "It would mean that a discharge in a Chapter 13 would be denied to a charlatan who committed embezzlement or fraud and was ordered to pay restitution as part of a criminal sentence, yet a debtor is essentially permitted to escape a civil judgment in favor of a victim of a violent crime, who had to seek a civil remedy, as no restitution remedy was available. This Court has a great deal of trouble accepting that Congress intended such a distinction.") In the case of a judgment creditor, this balance of equities can best be achieved by a judicial inquiry into the source of the debts sought to be discharged. This evaluation has been called "moralistic" by at least one case in this circuit. *See In re Keach*, 243 B.R. 851, 871 (1st Cir. BAP 2000).[3] Whether this balancing of equities is called moralistic, judging, or evaluating, it is exactly what the courts have been left with under the ambiguous requirement of good faith.

## A. Totality of the Circumstances Test

■ The six factors in analyzing whether a Chapter 13 plan has been filed in good faith are:

1. The debtor's accuracy in stating his debts and expenses;

2. The debtor's honesty in the bankruptcy process, including whether he has attempted to mislead the Court and whether he has made any misrepresentations;

3. Whether the Bankruptcy Code is being unfairly manipulated;

4. The type of debt sought to be discharged;

5. Whether the debt would be dischargeable in a Chapter 7; and

6. The debtor's motivation and sincerity in seeking Chapter 13 relief.

*Cabral*, 285 B.R. at 573. No one factor is determinative, but it is the totality of all the various factors and the facts of the particular case that is considered.

■ Here, there are virtually no other creditors, than the Creditor. The Creditor's claim makes up over 65% of the non-insider claims. There are no priority or secured creditors, other than the Trustee's fees and the Debtors' attorney fees. Furthermore the Plan provides for a de minimis to zero dividend to the creditors. Not

---

**2.** In this District a zero distribution to unsecured creditors under a Chapter 13 plan is a relevant factor that the Court may consider in determining whether to confirm a particular plan, but it is just a factor and not a *per se* rule for denying confirmation. *In re Fields*, 190 B.R. 16, 18 (Bankr.D.N.H.1995).

**3.** Three bankruptcy judges in Massachusetts have explicitly rejected the *Keach* decision, Judge Hillman in *In re Fleury*, 294 B.R. 1, 8 (Bankr.D.Mass.2003) (noting that the filing of a bankruptcy solely to thwart a creditor claim rather than making a honest effort to pay

debts is bad faith), Judge Rosenthal in *Scotten*, 281 B.R. at 149 (stating that the rationale in *Keach* leads to an absurd result), and Judge Kenner in *Virden*, 279 B.R. at 409 (finding the *Keach* decision contradictory and noting that B.A.P. decisions are only persuasive authority and not binding upon the bankruptcy courts). Furthermore, the First Circuit B.A.P decision in *In re Cabral*, 285 B.R. 563, 573 (1st Cir. BAP 2002), implicitly rejects *Keach* by adopting the totality of the circumstances test, the same test eschewed by *Keach*.

only is the Plan a thinly disguised liquidation, but it is in essence only a payment plan for the Debtors' bankruptcy attorney's fees. Congress did not create Chapter 13 as a vehicle solely for the payment of attorney's fees.[4]

The debt at issue would be nondischargeable in a Chapter 7 pursuant to section 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). It is clear to the Court that the Debtors filed for Chapter 13 solely to gain the superdischarge to discharge a debt that would remain nondischargeable in Chapter 7. There are no secured creditors, and the Debtors are current on their mortgage, car loan and tax obligations. There is only some credit card debt and an unsecured loan from William Dicey's mother. No evidence was presented that creditors were at the Debtors' "gates" demanding payment of their debts. In fact, it appears that the Debtors were current on all their obligations and only sought the protection of bankruptcy following the $40,000.00 judgment in state court, a debt that the Debtors did not even attempt to pay before they filed their petition a mere two weeks following the judgment.

"The bottom line is whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." *Virden*, 279 B.R. at 409. There is little doubt that the Debtors are attempting to manipulate the Bankruptcy Code to "thwart" this one Creditor.

## IV. CONCLUSION

The Debtors have not met their burden of demonstrating that their Chapter 13 plan was filed in good faith, and accordingly, confirmation is denied. The de minimis dividend, the fact that the debt would be nondischargeable under a Chapter 7, the fact that the case is in substance a one creditor case, the fact that no prepetition creditors are receiving any substantial payment, the fact that the only distributions will be to administrative creditors and the timing of the bankruptcy filing, all lead to the conclusion that the plan was not filed in good faith.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

---

4. *See, e.g.,* H.R.Rep. No. 95–595, at 118 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ("The purpose of Chapter 13 is to enable an individual ... to develop and perform under a plan for the *repayment of his debts over an extended period.* In some cases, the plan will call for repayment. In others, it may offer creditors a percentage of their claims in full settlement.") (emphasis added); S.Rep. No. 95–989, at 141 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 ("Chapter 13 is designed to serve as a flexible vehicle for the *repayment of part or all of the allowed claims of the debtor.*") (emphasis added); *Id.* at 12 ("In theory, the basic purpose of Chapter XIII has been to permit an individual to *pay his debts* and avoid [liquidation or straight] bankruptcy by making periodic payments to a trustee under bankruptcy court protection, with the trustee fairly distributing the funds deposited to creditors until all debts have been paid.") (emphasis added).