Maureen Janet SULLIVAN, Debtor.

Maureen Janet Sullivan, Appellant,

v.

Karen Solimini, as Executrix
of the Estate of Barbara
Breslin, Appellee.

BAP No. MB 04–061.
Bankruptcy No. 04–16391–JNF.

United States Bankruptcy Appellate Panel
of the First Circuit.

April 28, 2005.

David G. Baker, Esq., Boston, MA, on brief for Appellant.

No brief filed for Appellee.

Before LAMOUTTE, CARLO and KORNREICH, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

The debtor, Maureen Janet Sullivan (the "Debtor"), appeals from the bankruptcy court's October 22, 2004 order, granting the Motion To Dismiss With Prejudice filed by Karen Solimini ("Solimini"), as Executrix of the Estate of Barbara Breslin, thereby dismissing the Debtor's Chapter 13 case with a bar against refiling for 180 days, pursuant to 11 U.S.C. §§ 105(a) and 349(a). The Appellee, Solimini, did not file a brief in this case, but appeared through counsel at the oral argument scheduled by the Panel, merely to state that she would rest on the record and could not add anything to the bankruptcy court's order. For the reasons set forth below, we **AFFIRM**.

## *BACKGROUND*

### A. Solimini's Judicial Lien

In May, 2001, Solimini obtained a judgment against the Debtor in the Superior Court in Middlesex County. In its written Findings of Fact and Conclusions of Law, the Superior Court determined that the Debtor, at one time, owned property located at 109 Cherry Street, Malden, Massachusetts (the "Property") with her sisters, Barbara Breslin, Mary Rowe and Elaine Costa, as joint tenants with right of survivorship, and that the Property was unencumbered by liens or encumbrances. The Superior Court also determined that the Debtor induced her sister, Barbara Breslin, to execute an agreement transferring her interest in the Property for a promise to pay $40,000, and that the Debtor never intended to pay this amount to her sister.

### B. First Bankruptcy Case

On May 22, 2001, three weeks after entry of the Superior Court judgment, the Debtor filed her first Chapter 13 bankruptcy petition. In her Schedule A, the Debtor listed an ownership interest in the Property with a value of $250,000. On Schedule D, she listed New Jersey Mortgage as the holder of a secured claim against the Property in the amount of $169,000. She did not claim an exemption in the Property. The Chapter 13 Trustee moved to dismiss the case due to the Debtor's failure to make plan payments, produce evidence that the Property was insured, evidence of value or to submit evidence of income and expenses. The Debtor did not object, and the bankruptcy court dismissed the case on August 20, 2001. The bankruptcy court denied the Debtor's subsequent request to vacate the order of dismissal, and the case was closed on November 26, 2001.

### C. Second Bankruptcy Case

Approximately five weeks later, the Debtor filed her second Chapter 13 petition. The Debtor failed to file Schedules, a Statement of Financial Affairs or a Chapter 13 plan and, on January 23, 2002, the bankruptcy court dismissed the second case. After the case was dismissed, the Debtor filed Schedules and a Statement of Financial Affairs, wherein she listed the Property with a value of $325,000, subject to a mortgage in the amount of $180,000. She also filed a "Motion to Vacate Dismissal and Reinstate Bankruptcy" and a "Motion for Emergency Stay" in which she represented that she and seven tenants would be homeless if American Business Mortgage Services, Inc. ("ABMS"), pre-

sumably the successor in interest to New Jersey Mortgage, were permitted to proceed with a foreclosure sale of the Property on March 6, 2002.

On March 4, 2002, the bankruptcy court denied the Debtor's Motion to Vacate Dismissal and her Motion for Emergency Stay because the Schedules indicated that the Debtor had no disposable income with which to fund a Chapter 13 plan. On March 5, 2002, the Debtor moved the bankruptcy court to reconsider because of errors in her Schedules; she filed amended Schedules with her motion. Although ABMS foreclosed on the Property on March 6, 2002, producing a surplus of approximately $38,000, a few days later, the Debtor filed another set of Schedules, an amended Statement of Financial Affairs and a Chapter 13 plan. On Schedule A, she listed the Property with a value of $325,000, subject to liens totaling $252,000, including a mortgage lien of ABMS and a judicial lien obtained by Solimini. On Schedule C, the Debtor claimed the Massachusetts homestead exemption for certain property in Peabody, Massachusetts. Her amended Schedules I and J showed excess monthly income of $748.

The Debtor also filed motions to reinstate the stay nunc pro tunc, to suspend post-petition mortgage and plan payments and to use cash collateral. On March 12, 2002, the bankruptcy court granted her motion to reconsider and reopened her bankruptcy case. The bankruptcy court scheduled hearings on the Debtor's other motions, as well as on a motion for relief from stay filed by ABMS. On April 18, 2002, the bankruptcy court denied the Debtor's motion to reinstate the stay nunc pro tunc as an improper pleading, noting that the relief requested required an adversary proceeding pursuant to Bankruptcy Rule 7001(1).

On May 9, 2002, the Debtor filed an adversary proceeding against ABMS. That same day, the bankruptcy court denied ABMS's motion for relief from stay as superfluous because it had conducted a foreclosure sale on the Property on March 6, 2002, at a time when the Debtor did not have a pending bankruptcy case. On May 21, 2002, the Debtor filed a motion to avoid liens, which was ultimately granted because there were no timely filed objections to the Debtor's claimed exemptions. Thus, the Debtor avoided the judicial lien obtained by Barbara Breslin.

Despite the Debtor's success on the lien avoidance motion, the bankruptcy case was ultimately dismissed on the Chapter 13 Trustee's motion because the Debtor failed to produce a recorded homestead and insurance binder. Additionally, according to the Chapter 13 Trustee, the Debtor failed to disclose a prior claim for payment of attorneys' fees and failed to make plan payments. The case was closed on August 28, 2002.

### D. Third Bankruptcy Case

On May 30, 2003, the Debtor filed her third Chapter 13 petition, disclosing the second bankruptcy case, but not her first. In her Schedules, she claimed an exemption in "surplus money from foreclosure of residence,. presently held by foreclosing attorney" in the sum of $42,000. Her Schedules also showed net disposable income of $412 per month. She proposed a 60–month Chapter 13 plan to pay a second mortgage obligation to her sister, Mary Rowe, in the sum of $17,000, which mortgage lien had attached to the proceeds from the sale of the Property. Additionally, she proposed to pay a 10% dividend to the Estate of Barbara Breslin and any attorney's fees owed to ABMS. The Chapter 13 plan was therefore predicated upon

the avoidance of the lien pursuant to § 522(f).

The Chapter 13 Trustee moved to dismiss the case, and later objected to the Debtor's claimed exemption in proceeds from the foreclosure sale of the Property and the Chapter 13 plan. Solimini objected to the Debtor's lien avoidance motion and to the confirmation of the plan. The bankruptcy court held a hearing on September 18, 2003, and took the pending motions under advisement.

In the meantime, on August 5, 2003, the Debtor had filed a notice of removal of an interpleader action commenced by ABMS against the Debtor, Solimini and Mary Rowe in the Middlesex County Superior Court (MICV 2002–4921) ("Interpleader Action"), seeking a determination of the ownership of the surplus from the foreclosure sale of the Property. However, on December 16, 2003, the bankruptcy court issued an order abstaining from the proceeding.

On January 23, 2004, the bankruptcy court deferred ruling on various pending motions, including the Chapter 13 Trustee's motion to dismiss, the Debtor's motion to avoid judicial lien, various objections to confirmation and the Debtor's claimed exemption in the surplus proceeds, pending the outcome of the Superior Court Interpleader Action. However, on July 8, 2004, the bankruptcy court dismissed the Debtor's third Chapter 13 petition because the Debtor lacked sufficient income to fund a Chapter 13 plan. The case was closed on August 5, 2004.

### E. Fourth Bankruptcy Case

Before her third Chapter 13 case was closed, the Debtor filed her fourth Chapter 13 case on August 3, 2004; shortly thereafter, she filed her Schedules, Statement of Financial Affairs and a Chapter 13 plan. The Debtor listed three creditors: The Estate of Barbara Breslin with an attachment in the amount of $55,000; Mary Rowe with a mortgage of $17,000; and the IRS with an unsecured priority lien of $6,930. She also listed ABMS with an unliquidated claim for attorneys' fees against the surplus proceeds from the foreclosure sale of the Property and the Massachusetts· Department of Revenue with a priority claim in an unknown amount. In ·her Chapter 13 plan, the Debtor proposed to pay her creditors $423 per month "for 36 months or less, depending on when surplus money is available to the debtor." She proposed to pay Mary Rowe's secured claim in the approximate amount of $17,000; to pay the IRS $6,930.38 in accordance with its proof of claim; and to pay. her attorney $2,500 as an administrative expense claim. She later filed an amended Chapter 13 plan, proposing to pay $423 per month for 36 months, "plus a balloon from the mortgage surplus."

On August 16, 2004, Solimini filed a motion to dismiss the Debtor's fourth Chapter 13 case based on the history of prior filings and dismissals, and the Debtor's purpose in unreasonably delaying and hindering the Superior Court Interpleader Action. The Debtor objected. While the motion to dismiss was pending, the Debtor filed an adversary proceeding against ABMS and their attorneys, Harmon Law Offices, seeking an order requiring them to turn over the surplus proceeds from the foreclosure sale of the Property, which remain the subject of the Interpleader Action in Superior Court.

The bankruptcy court held a hearing on Solimini's motion to dismiss on September 23, 2004, and took the matter under advisement. On October 22, 2004, the bankruptcy court issued an order dismissing the case with a bar to refiling for 180 days,

and an accompanying Memorandum. This appeal ensued.

### F. Bankruptcy Court's Decision

Adopting the standard set forth in *In re Fleury*, 294 B.R. 1 (Bankr.D.Mass.2003), and conducting a totality of the circumstances test, the bankruptcy court found that dismissal was warranted in this case.[1] First, the bankruptcy court found that "the Debtor's present Chapter 13 case and plan are predicated upon a fundamental inconsistency with respect to her proposed use of the surplus from the sale of the Property," noting that the Debtor claimed an exemption in the surplus proceeds and yet proposed to use them, at least in part, to satisfy the claims of her creditors. The court concluded that the proceeds were the Debtor's only asset of consequence and that if the Debtor were to obtain the proceeds, she could dismiss her case without using them to pay Solimini or the IRS. The court concluded that the Debtor's serial filings suggest this result.

The bankruptcy court also concluded that "the instant case is little more than an attempt to reverse the abstention order entered by the court in the interpleader action, which the Debtor removed to this Court in her third bankruptcy case." As the bankruptcy court noted, the Debtor did not appeal the abstention order; however, upon dismissal of her third Chapter 13 case, she immediately filed the instant case and sought, first by way of motion, and then by way of complaint, to compel ABMS and Harmon Law Offices to turn over to her, the surplus proceeds from the foreclosure sale. The Debtor, through her adversary complaint, seeks essentially the same relief she sought in her "Counter-claims and Cross–Claims," which she filed in the Interpleader Action. The court considered that the Debtor has only one creditor, the IRS, other than her fellow defendants in the interpleader action. The Court concluded that creditors had nothing to gain from a Chapter 13 plan that could not be obtained outside of bankruptcy.

Finally, the bankruptcy court concluded:

In view of the undisputed circumstances surrounding Barbara Breslin's transfer of the Property to Sullivan, which were the subject of litigation in the Superior Court, and the pending interpleader action in the Superior Court, the Court infers that the purpose of the Debtor's fourth Chapter 13 case is not to satisfy the judgment obtained by Solimini but to obtain the surplus proceeds from the foreclosure sale of the Property, the deed to which she obtained from Barbara Breslin by improper means. Such a strategy might be acceptable under different circumstances, for example, if there were other creditors or the Debtor did not have a history of serial, unsuccessful Chapter 13 cases. Here, however, the strategy illuminates the Debtor's bad faith and provides grounds for dismissal of her fourth bankruptcy case.

### G. The Debtor's Argument

The foundation of the Debtor's argument on appeal is that the bankruptcy court erred in dismissing her case due to her bad faith in filing her fourth bankruptcy petition. In her brief, the Debtor does not specifically argue that there was no bad faith in filing her petition. Rather, she argues that "there is no statutory re-

---

**1.** The bankruptcy court in *Fleury* considered: (1) whether the debtor misrepresented facts in her petition, unfairly manipulated the Bankruptcy Code, or otherwise filed her Chapter 13 petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. *See Fleury*, 294 B.R. at 6.

quirement that a petition be filed in good faith" and that "bankruptcy courts should limit their inquiry into whether *the plan* has been filed in good faith." According to the Debtor, the bankruptcy court should not have dismissed the case for lack of good faith since the Debtor proposed a plan that was confirmable and provided for the treatment of Solimini's claim in a manner permitted by the Bankruptcy Code.[2]

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). An order dismissing a Chapter 13 case is a final order. *See Fleury v. Carmichael (In re Fleury)*, 306 B.R. 722, 726 (1st Cir. BAP 2004); *In re Bentley*, 266 B.R. 229, 233–34 (1st Cir. BAP 2001).

## STANDARD OF REVIEW

Appellate courts reviewing an appeal from the bankruptcy court generally apply the "clearly erroneous" standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994).

A bankruptcy court's decision to dismiss or convert a case under § 1307(c) is reviewed for an abuse of discretion. *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1222–23 (9th Cir.1999); *see also Ho v. Dowell (In re Ho)*, 274 B.R. 867, 870–71 (9th Cir. BAP 2002). A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *Ho*, 274 B.R. at 871. A finding of bad faith, as a basis for granting a motion to convert or dismiss under § 1307(c), is reviewed for clear error. *Leavitt*, 171 F.3d at 1223. The clearly erroneous standard requires this Panel to give great deference to the bankruptcy court as the trier of fact. Under this standard, a finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

## DISCUSSION

Section 1307(c) provides that on request by a party-in-interest, after notice and a hearing, the court may dismiss a case under Chapter 13 or convert the case to a Chapter 7 case, whichever is in the best interests of the creditors and the

---

**2.** At oral argument, the Debtor conceded that a Chapter 13 case filed in bad faith can be dismissed for cause, using a totality of the circumstances test, but argued that the facts of this case do not amount to bad faith.

estate, for cause. For Chapter 13 cases, § 1307(c) specifically enumerates ten circumstances in which a court may convert or dismiss a case. Although lack of good faith is not specifically enumerated as "cause," it is well established that lack of good faith (or bad faith) is "cause" for dismissal or conversion of a Chapter 13 case under § 1307(c). *See In re Cabral,* 285 B.R. 563, 573 (1st Cir. BAP 2002); *Leavitt,* 171 F.3d at 1224; *Ho,* 274 B.R. at 877; *In re Dicey,* 312 B.R. 456, 458 (Bankr.D.N.H.2004); *Fleury,* 294 B.R. at 5; and *In re Virden,* 279 B.R. 401, 407 (Bankr.D.Mass.2002).

Courts differ in their approach to determining a debtor's good faith, but the majority favor a totality of the circumstances test to determine whether a debtor lacked good faith in filing a Chapter 13 petition for purposes of § 1307(c).[3] The United States Bankruptcy Appellate Panel for the First Circuit originally did not adopt a totality of the circumstances approach to determine lack of good faith, but instead advocated an examination of only the circumstances relevant to the debtor's proposed plan and post-filing conduct. *See In re Keach,* 243 B.R. 851, 856 (1st Cir. BAP 2000). However, in the five years since the Panel's decision in *Keach,* the bankruptcy courts in this circuit have expanded *Keach's* examination of the debtor's lack of good faith to include both pre-petition and post-petition conduct of the debtor. *See Dicey,* 312 B.R. 456; *Fleury,* 294 B.R. 1; *In re Scotten,* 281 B.R. 147, 149 (Bankr. D.Mass.2002); and *Virden,* 279 B.R. 401. The Panel then implicitly adopted the totality of the circumstances test to determine lack of good faith by affirming a bankruptcy court's decision granting a Chapter 7 trustee's motion to reconvert a Chapter 13 to Chapter 7, for cause, based on the totality of circumstances test. *See Cabral,* 285 B.R. at 573–74. Thus, the majority of the bankruptcy judges in this circuit have followed the totality of the circumstances approach.

 We explicitly adopt the totality of the circumstances test and conclude that the obligation of good faith is imposed on the debtor at two stages of a Chapter 13 proceeding. First, a debtor must file the Chapter 13 petition in good faith. *See In re Love,* 957 F.2d 1350, 1354–55 (7th Cir. 1992); *Dicey,* 312 B.R. at 458; *Fleury,* 294 B.R. at 5; and *Virden,* 279 B.R. at 407. Second, the debtor must file the Chapter 13 plan in good faith. *See id.; see also* 11 U.S.C. § 1325(a)(3). The only distinction is that under § 1307(c), the objecting creditor has the burden of proof, while under § 1325(a)(3), it is the debtor's burden. *See Dicey,* 312 B.R. at 458; and *Virden,* 279 B.R. at 407. Both inquiries advance one of the primary purposes of bankruptcy, which is to relieve the honest but unfortunate

---

**3.** *See, e.g., Leavitt,* 171 F.3d at 1224 (bad faith as cause for dismissal of Chapter 13 petition involves application of a totality of the circumstances test); *Ho,* 274 B.R. at 879 ("[A]ny finding of § 1307(c) 'cause' would require a totality of the circumstances analysis followed by, if 'cause' is found, consideration of whether conversion or dismissal is in the best interests of creditors and the estate."); *Love,* 957 F.2d at 1355 (bankruptcy courts must look at the totality of the circumstances on a case-by-case basis when determining good faith); *see also Mason v. Young (In re Young),* 237 F.3d 1168, 1174 (10th Cir.2001) (determination of good faith is made on a case-by-case basis, looking at the totality of the circumstances); *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996) (good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances); *Solomon v. Cosby (In re Solomon),* 67 F.3d 1128 (4th Cir.1995) (affirming totality of the circumstances standard); *In re Schaitz,* 913 F.2d 452 (7th Cir.1990) (good faith analysis under Chapter 13 depends on the totality of the circumstances); *Fleury,* 294 B.R. at 6; *Virden,* 279 B.R. at 408.

debtor from the weight of oppressive indebtedness, allowing the debtor to start afresh. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). If a creditor is successful in proving that the debtor filed the petition in bad faith, the court may dismiss the petition for cause.

The term "good faith" is not defined in the Bankruptcy Code and thus, the meaning has been the subject of extensive litigation. Since it is not defined, the inquiry is necessarily a "fact intensive determination." *Love,* 957 F.2d at 1355. Therefore, courts engage in a multi-faceted analysis that is applied on a case-by-case basis. *Virden,* 279 B.R. at 407–09. "Whether this balancing of equities is called moralistic, judging, or evaluating, it is exactly what the courts have been left with under the ambiguous requirement of good faith." *Dicey,* 312 B.R. at 459.

In applying the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief. *Cabral,* 285 B.R. at 573; *Dicey,* 312 B.R. at 459; *Virden,* 279 B.R. at 408. A finding of bad faith does not require fraudulent intent by the debtor. *See Fleury,* 294 B.R. at 6.

> Neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.

*Ho,* 274 B.R. at 876 (citations omitted).

The factors enumerated in *Cabral, Dicey* and *Virden* do not specifically include two of the factors considered by the bankruptcy court in *Fleury,* and adopted by the bankruptcy court in this case, namely the debtor's history of filings and dismissals and whether the debtor only intended to defeat state court litigation. However, these two factors would certainly be considered in determining whether a debtor is unfairly manipulating the Bankruptcy Code and in considering the debtor's motivation and sincerity in seeking Chapter 13 relief. The hallmark of the totality of the circumstances test is that the factors to be considered may vary in each case. "The bottom line is whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." *Virden,* 279 B.R. at 409.

In the present case, this Panel rejects the Debtor's argument that there is no good faith requirement in the filing of a bankruptcy petition. This Panel likewise finds the Debtor's attempts to distinguish the facts of the *Fleury* case and persuade the Panel that *Fleury* actually involved the debtor's bad faith in filing a plan, and not the petition, are disingenuous. In rendering its decision, the *Fleury* court concluded that the debtor's history of filings demonstrated that the debtor filed her petition for the sole intent of discharging a debt that was awarded in a settlement agreement in state court. The entire focus of the *Fleury* court's analysis was on the debtor's intentions in filing her petition, not in filing a plan. That is similar to the bankruptcy court's conclusion in this case

that the Debtor's purpose in filing her fourth bankruptcy petition was not to satisfy the judgment obtained by Solimini, but to obtain the surplus proceeds from the foreclosure sale of the Property, the deed to which she obtained by improper means.

This Panel can not conclude that any of the bankruptcy court's findings with respect to the Debtor's lack of good faith in filing her fourth petition are clearly erroneous. The Debtor can not dispute that the underlying judgment to Solimini was based on fraud and that it would not be dischargeable in a Chapter 7. With respect to the Interpleader Action, in the Debtor's third petition, she sought to remove it from the state court and the bankruptcy court abstained. In the Debtor's fourth petition she likewise filed an adversary proceeding seeking turnover of the surplus proceeds, which remained the subject of the Interpleader Action. The bankruptcy court could readily conclude that the Debtor was attempting to defeat the state court litigation.

Likewise, based on the Debtor's unsuccessful, serial filings, the bankruptcy court could properly conclude that the purpose of the filing was to obtain the surplus proceeds from the foreclosure, but not to satisfy Solimini's judgment. The IRS was the Debtor's only creditor, other than her fellow defendants in the Interpleader Action. Moreover, there were discrepancies as to the Debtor's treatment of the funds, on one hand claiming them as exempt, and on the other proposing to use them to fund her Chapter 13 plan. The Debtor's conduct in her previous cases also demonstrated her lack of sincerity. In the Debtor's previous cases, she failed to comply with her obligations as a debtor by failing to make payments, produce documents requested by the trustee or submit evidence of income and expenses in her first case

and failing to file schedules, a statement of financial affairs, or a plan in her second case, until after the case had been dismissed. The Debtor's second petition was dismissed twice, originally for lack of disposable income and the second time for failing to produce documents requested by the trustee, failing to disclose a claim for payment of attorney's fees and failing to make payment. In the Debtor's third case, the bankruptcy court again concluded that the Debtor lacked sufficient income to fund a plan. Moreover, in the Debtor's third petition she disclosed her second petition but failed to disclose her first. In the Debtor's fourth petition, her monthly disposable income was only $11 more than in her previous case. From these circumstances, the bankruptcy court could reasonably infer that the Debtor's only purpose in seeking Chapter 13 relief was to obtain the surplus proceeds from the foreclosure sale, but not to satisfy Solimini's judgment.

### CONCLUSION

In reviewing the entire record, the Panel can not conclude that a mistake has been committed. Considering the totality of the circumstances, the bankruptcy court properly found that the Debtor filed her fourth petition in bad faith. The bankruptcy court did not abuse its discretion in dismissing the Debtor's fourth petition for cause. Accordingly, we **AFFIRM**.